# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA J. WEST, | ) |
| Plaintiff, | ) ) ) |
| vs. | )  Case No. 08-CV-728-TLW ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION

Plaintiff Barbara West seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance under Title II of the Social Security Act ("Act"), 42 U.S.C. § 405(g). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1] [Dkt. # 10].

## Background

Plaintiff was born on August 12, 1956, and was 51 years old on the date of the hearing before the ALJ. [R. 296]. Plaintiff completed the eleventh grade and later obtained a GED. She was divorced twice, lives alone, and has two adult children, ages 32 and 33. [R. 189, 296]. Plaintiff worked as a home health aide from 1990 until 2003. [R. 60-64, 118]. She has also worked as a cashier and cook for the Union Public School System. [R. 90]. For five months prior to the hearing before the ALJ, plaintiff worked as a sitter/companion for an elderly neighbor lady from 9:30 a.m.

---

[1] Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Robert Kallsnick was held on September 4, 2007. By decision dated November 8, 2007, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied plaintiff's request for review. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

until noon, 5 to 6 days a week. Her tasks included preparing light meals and assisting with bathing, grooming, laundry, and light housekeeping. [R. 134, 136, 315].

In her application, plaintiff claimed to be unable to work since April 28, 2003, following an injury to her back on April 22, 2003, from lifting a heavy patient while working for The Visiting Nurses Association. [R. 66, 117]. Plaintiff filed a workers compensation claim and began receiving benefits on July 21, 2003, in the weekly amount of $288.62. [R. 131]. Plaintiff now seeks social security disability benefits from the injury to her back and resulting depression, leg pain, and neck pain. [R. 65].

In assessing plaintiff's qualification for disability benefits, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since April 22, 2003, the alleged disability onset date, and that plaintiff met the insured status requirements through December 31, 2008. [R. 16]. At step two, the ALJ determined plaintiff's severe impairments to be depression, status post fusion L5-S1 (2003) with hardware removal (2004), and post surgical spondylolisthesis of L5 on S1. [R. 16]. At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, and Regulation No. 4. [R. 17]. The ALJ found plaintiff has the residual functional capacity ("RFC") to perform light work with only occasional stooping; simple, but not complex, tasks under routine supervision; relate adequately to supervisors and coworkers for routine work related matters, but not able to sustain close interaction with the general public. She would have symptoms of mild to moderate to occasional chronic pain but would be able to remain attentive and carry out her work. [R. 17]. At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a home health aide, and home companion/sitter, due to mental and physical

limitations. [R.21]. The ALJ found transferability of job skills was not material to the determination of disability. [R. 21]. At step five, the ALJ considered plaintiff's age at the time of her injury, education, work experience – as well as plaintiff's RFC, the Medical-Vocational Guidelines ("Grid") and the testimony of the vocational expert– and found that plaintiff was capable of performing light exertion work, within the specific limitations listed above, and that such jobs exist in substantial numbers in the national economy. The ALJ concluded that plaintiff was not disabled within the meaning of the Act. [R. 22-23]. This finding was the fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2] To determine the types of available work plaintiff could perform in the national economy, the ALJ relied on the Grid and the testimony of a vocational expert. [R. 23]. The ALJ concluded that plaintiff could perform such light exertion occupations as mail clerk, sorting, laundry press, assembly and miscellaneous labor. [R. 22].

## Issue

The only issue presented on appeal is whether the ALJ erred in rejecting the medical opinion of treating physician Jeff Wright, D.O. [Dkt. # 18 at 2].

## Discussion

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

support the decision and whether the correct legal standards were applied.  See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).  Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

A claimant for disability benefits bears the burden of proving a disability.  42 U.S.C.§ 423 (d)(5); 20 C.F.R. § 404.1512(a).  "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the time of her alleged disability.  20 C.F.R. § 404.1512(b).  Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.§ 423 (d)(3).  "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R.

§ 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

Plaintiff contends the ALJ erred in failing to rely on the medical opinion of plaintiff's treating physician Dr. Jeff Wright, arguing that his opinion was consistent with those of the agency physicians and other evidence in the record. Plaintiff asserts the record was "clear and uncontroverted" that plaintiff suffers from pain, limited range of motion, radiculopathy and depression. [Dkt. # 18 at 7]. Plaintiff points out that Dr. Kenneth Trinidad limited her to sedentary work because of complaints of pain, which is the same limitation imposed by her treating physician Dr. Wright. Plaintiff further claims that Dr. Wright's opinion is supported by lengthy documentation of pain and radiculopathy, and is consistent with the MRI and X-ray evidence. [Dkt. # 18 at 9]. The Court disagrees.

The ALJ summarized the medical records prepared by Dr. Wright and found:

R. Jeff Wright, D.O., saw Ms. West initially on December 6, 2005, for complaints of hypothyroidism, fatigue, depression, lumbar disc disease, and chronic pain. She returned on February 1, 2006, with an additional complaint of loud ringing in her ears. She returned for follow up and medication refills on July 11, 2006 and August 15, 2006 (Exhibit 15F). On May 16, 2007, Ms. West was seen for a general physical and continued complaints of back and leg pain (Exhibit 16F).

[R. 20]. The ALJ also summarized Dr. Wright's opinion evidence as follows:

As for the opinion evidence, Dr. Wright completed a medical source statement on September 17, 2007. He indicated that due to the severity of Ms. West's back and leg pain, she could sit for 30 minutes at one time and 2 hours total during entire 8-hour day; stand 30 minutes at one time and one hour total during entire 8-hour day; and walk 30 minutes at one time and one hour total during entire 8-hour day. She can occasionally lift and/or carry up to 5 pounds; has limited use of feet for repetitive movements for extended periods of time (more than 30 minutes); and has limited use of hands for grasping due to bilateral hand pain. Ms. West is able to occasionally handle, grasp, finger, and feel with both hands; can occasionally bend and reach, but never squat, crawl, or climb. She has mild restriction of activities, involving being

5

> around moving machinery; exposure to marked changes in temperature and humidity; exposure to dust, fumes, and gases; driving and vibrations (Exhibit 19F).

[R. 21]. The ALJ concluded that he gave little weight to the opinion of Dr. Wright because it was inconsistent with both the medical evidence and the claimant's activities of daily living. [R. 21].

The ALJ cited objective medical evidence which contradicted the medical opinion of Dr. Wright, he found:

> While she does continue to suffer from some back pain, x-rays show the fusion is solid, and the MRI shows no evidence of disc herniation or nerve root compression. Limiting her to light work should reasonably be expected to limit aggravating her pain.

[R. 21]. This finding is supported by the evidence. See [R. 144, 158, 247].

To support his finding, the ALJ relied on Ms. West's statement that she is "limited for life" to a 20 pound weight lifting restriction. [R. 19]. This statement is consistent with that of her primary care physician and surgeon who placed a 20 pound weight restriction on plaintiff, post operative. [R. 168]. In the functional report that plaintiff prepared and filed with the SSA, plaintiff placed a 25 pound weight restriction on her ability to lift. [R. 105]. This evidence impeaches Dr. Wright's five (5) pound weight restriction.

Contrary to plaintiff's claim, Dr. Kenneth Trinidad's opinion is inconsistent with that of Dr. Wright's opinion of plaintiff's limited physical endurance. Dr. Trinidad classified plaintiff's condition as "temporarily disabled", that her condition was "acute," not chronic, and that her "maximum medical recovery" required "further treatment." The ALJ found and concluded:

> Kenneth R. Trinidad, D.O., examined Ms. West on April 25, 2005. The claimant had tenderness and spasm in the cervical spine from C1-C4 on the right and in the lumbar spine from L5-S1 bilaterally. There was decreased sensation in the L5 and S1 distribution in the left leg and weakness in the left leg in a L4, L5 and S1 distribution. It was Dr. Trinidad's opinion that the claimant sustained significant injuries on or

> about April 22, 2003, and has been temporarily disabled since. He added that until such time as maximum medical recovery has been achieved, her condition remains acute and requires further treatment (Exhibit 12F).

[R. 20]. The ALJ cited the records of plaintiff's primary care physician, Dr. Kash Biddle, D.O. [R. 226-245]. The ALJ found that although Dr. Biddle treated plaintiff from September 5, 2002 through July 28, 2005, for back pain, leg pain, anxiety and depression, he also treated her for a variety of other ailments. [R. 20].[3]

The physical RFC assessment performed by the agency physician on April 12, 2005, also contradicts the assessment made by Dr. Wright. For example, the agency physician opined that plaintiff could occasionally lift and carry 10 pounds, sit about 6 hours in an 8-hour work day, was unlimited in her ability to push and pull (including operating hand and/or foot controls), she could frequently climb, stoop, crouch, crawl and occasionally kneel, and she had no restrictions in reaching, handling, fingering, and feeling. [R. 247-248].

The ALJ determined that plaintiff's depression would not interfere with her ability to perform light exertion work because she has a history of working despite depression. He found that her depression has occurred throughout her life, including significant trauma during her childhood. Her father was shot and killed 13 years earlier. Although she has nightmares, her sleep has improved with medication. She has never sought mental health treatment. Plaintiff's general fund of information was intact, as well as comprehension of logical information, and abstract/conceptual reasoning. [R. 19-20]. The ALJ concluded: "With respect to Ms. West's mental limitations, she should be able to perform unskilled work within the limitations shown in the residual functional

---

[3] In 2002, plaintiff had a hysterectomy and was subsequently treated for hot flashes, cold hands, weight gain, mood swings, hair loss and insomnia. Dr. Biddle also treated plaintiff with hormone replacement therapy following her thyroidectomy. [R. 231].

capacity without experiencing significant exacerbation of her symptoms." [R. 21].

Significantly, the ALJ cited plaintiff's recent part time employment and her daily living activities, both of which are inconsistent with Dr. Wright's findings of limited physical endurance. The ALJ cited plaintiff's testimony to support his RFC assessment:

> At the hearing, the claimant testified that: She has worked part time for the last 5 months as a sitter companion for an elderly neighbor lady. The claimant stated that she works from 9:30 a.m. until noon, 5 to 6 days a week, for this individual. She performs the following work: fixes oatmeal and toast and puts her dishes in the dishwasher; she sometimes has to wash the lady's back; brushes her hair; does small loads of laundry; fixes her salad or soup for lunch (or she may have meals on wheels); straightens her bed; takes out the trash; makes certain nothing is in the way of her scooter; cleans the toilet; wipes out the sink; and does some sweeping.

[R. 18]. The ALJ found plaintiff has mild restrictions in daily living activities, moderate difficulties in social functioning and marked difficulties in concentration, persistence or pace and has experienced one or two episodes of decompensation. [R. 17]. The ALJ's assessment is in line with that of the assessment made by the agency's psychologist. "ADLs are limited by physical impairments. She prepares meals, attends to self care, needs no reminders, performs light household tasks, drives, shops, handles money, reads & uses computer daily, interacts with others." [R. 205]. On her functional report prepared for the SSA, plaintiff indicates she could walk about 5 to 8 blocks, resting 5 or 10 minutes after 2 or 3 blocks. [R. 105]. Consistent with the ALJ's assessment, the physical RFC performed by the agency physician opined that plaintiff could sit 6 hours in an 8-hour day, and is unlimited in her ability to push and pull and that her daily living activities include light meal preparation, washing dishes, doing laundry, shopping weekly for an hour. [R. 247].

Under the regulations, agency rulings, and Tenth Circuit case law, an ALJ must give a good reason in his decision for the weight he assigns to a treating physician's opinion. See 20 C.F.R. §

404.1527(d)(2), Social Security Ruling 96-2p and <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). In this instance, the ALJ stated he gave "little weight" to the opinion of Dr. Wright because "it was inconsistent with both the medical evidence and the claimant's activities of daily living." [R. 21]. As shown above, the ALJ's findings in this regard are supported by substantial evidence.

In determining whether a treating physician's opinion should be given controlling authority, the analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory techniques." If the answer is "no," then the inquiry at this stage is complete. The medical opinion of Dr. Wright was based primarily on plaintiff's complaints of pain rather than any acceptable objective medical evidence. "An ALJ should keep in mind that 'it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" As shown above, the opinion of Dr. Wright was inconsistent with other medical evidence of record and with the objective findings as shown by plaintiff's MRI and x-ray reports.

Thus the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standard was applied. The ALJ entered specific findings by stating the medical evidence he accepted and rejected and linked those findings to specific citations in the record. It is evident that the ALJ considered all the relevant evidence, he discussed the evidence which supported his decision, the uncontroverted evidence he chose not to rely upon and the probative evidence he rejected. The ALJ demonstrated why the opinion of Dr. Wright was inconsistent with other substantial evidence of record and he gave legitimate reasons to support his decision. Thus the ALJ

complied with the requirements of 20 C.F.R. § 416.927(d)(2).

## Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 23rd day of November, 2009.

_____
T. Lane Wilson
United States Magistrate Judge